IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CRIMINAL ACTION NO.: 1:09-CR-241-WSD |
| MAMADOU SADIO BARRY | |
| Defendant. | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL

COMES NOW, Defendant Mamadou Sadio Barry,[1] by and through undersigned counsel, and file this brief in support of their Motion for Judgment of Acquittal pursuant to Rule 29.

For sake of brevity, the defendants will not review the procedural history.

## SUMMARY OF THE FACTS:

- Sedikey Sankano is a co-conspirator who testified to several pertinent facts:

  o He acknowledged his own involvement and how he committed his criminal acts;

---

[1] Undersigned counsel has inserted Section "E" below, as submitted by attorney Zimmerman, addressing the case of *United States v. Huff*. Counsel is authorized to state that attorneys Zimmerman, Secret, and Barnwell all join in this brief on behalf of their respective clients.

- o Though called by the Government, he did not mention any interaction between the various distributors of disks—he offered no evidence of a single conspiracy or his understanding of the purported conspiratorial agreement; and

- o Remarkably, he recognized no one at the defense table.

- Similarly, Amadou Diallo testified in a manner that supported his own guilt but he did not link others to a single conspiracy.  He testified that:

  - o He paid Alpha Bah for "paper" and to burn disks;

  - o He brought Alpha his own masters as they were not even sharing masters;

  - o He paid Alpha Bah cash for each job ($18 for 200 masters);

  - o He offered no evidence of a single conspiracy or his understanding of the purported conspiratorial agreement; and

  - o He identified none of the defendants.

- Scott Ahn's and Agent McGroarty each testified that there was evidence of competition between the accused.  In fact, if the Ahn's prices were not the best, they would lose clientele.

- The Ahn's generally expected to be paid in cash and had no stake in the sales of those who bought from them.

  - o The buyer/seller relationship between the Ahns and their customers was affirmed by the fact that Ahns even charged for repairs to towers.

- Although all of the accused used the same supplier of disks (the Ahns), they did so because they were competitors who all went to the least expensive source of supply.

  - o Ahn testified that he viewed each of his buyers as competitors.

- Phone records link many of the accused to Alpha Bah, but not to each other.

2

## ARGUMENT AND CITATION OF AUTHORITY

The government has alleged in count one a conspiracy.  The government has referred to its theory as a "hub-and-spoke" conspiracy[2] wherein a conspirator exists at the center of the conspiracy and directs the conspiracy from that central location.  However, what the Government has actually presented to the jury is "rimless wheel conspiracy" which is either no conspiracy at all or a number of separate conspiracies that were not identified or charged separately in the indictment.  A "rimless wheel conspiracy" is typified by a "conspiracy" wherein the individual at the "hub" of the conspiracy interacts with those along the various "spokes" of the wheel but the various spokes do not share a common aim and are not interrelated or dependent upon one another.

This type of multiple conspiracy "conspiracy" is akin to "a 'rimless wheel' because there is no rim to connect the spokes in a single scheme."

---

[2] Although the Government was the first party to use the term "hub and spoke conspiracy" in this case, the Government, in its brief, makes an effort to disavow the analogy to the wheel.  However, contrary to the law relied upon by the Government, the analogy is valid and very much in use.  In fact, the Government attacks the analogy with *dicta* from a case decided prior to *Chandler*.  *See* Government Brief at 4-6.

A. **Summary of the Argument**

Our argument is three-fold as it pertains to whether there is a single conspiracy:

1. Every defendant who was selling CD/DVDs was in business for himself and each ran his own operation. Consequently, there are nearly as many operations as there are defendants named in this indictment. The Government has acknowledged that there are nine different distributors selling CD/DVDs. *See* Government Brief at 11-13 and 21-22. The Government's basis for charging a single conspiracy is that each defendant may have conspired with the Ahns. This is simply insufficient as even Scott Ahn testified that his position was contingent on his ability to offer competitive prices and that he viewed his purchasers as competitors whose business that he had to nurture with a phone call when he was not visited.

2. Assuming that the Court disagrees with the argument summarized in the paragraph above, there are clearly still multiple conspiracies within the indictment. While some conspirators may have had interaction, there is no evidence of an "over-arching conspiracy." Thus, while some "spokes" may be connected by a portion of a "rim," there are still multiple conspiracies that are charged as one. The Government, in its brief, makes the argument

4

that some codefendants are linked; however, they fail to demonstrate that all are linked in a single over-arching conspiracy. Indeed, the Government's desperation to link these men goes so far as to offer evidence of an accused waving to some other purported coconspirator or arriving at the Ahns while another is leaving as evidence that they are coconspirators.

3. Assuming that the Court disagrees with the argument summarized in the paragraphs above, there is still evidence of at least two conspiracies. The Government purchased disks from Sulaiman Jalloh and has presented evidence of such. However, they have offered no evidence to link Jalloh to the conspirators in this case. The best evidenced of the failure to link Jalloh is the Government's own tacit admission—the Government filed a 23 page brief on this very topic wherein they took pains to link Mssrs. Baradji, Barry, and Barry to each other or others. However, it is strikingly apparent that Mr. Jalloh is not mentioned in any facts cited therein. Thus, the Government is acknowledging that Jalloh was not part of a single conspiracy. If the Court agrees with that conclusion, there are at least two conspiracies—the conspiracy involving Jalloh and a conspiracy involving the others. For the reasons to be discussed herein, these facts mandate dismissal of Count One against all defendants named therein.

**B. Chandler**

The seminal case in this area is *United States v. Chandler*, 388 F.3d 796 (11th Cir.2004).  The Court has informed all the parties that it has read the case. Consequently for sake of brevity, the defendants will rely on the fact that the Court has thoroughly read *Chandler* and cite only to the following passage that succinctly summarizes the holding of *Chandler*:

> This was error of constitutional proportions. In order to prove the charged conspiracy, the government had to show that the defendants **knew and agreed to some scheme larger than their own spoke . . . . Without evidence of an agreement to participate in the larger scheme charged in the indictment, the government proved only that there may have been multiple conspiracies** . . .

*Id.* at 808.  (emphasis added).

**C. Ellis**

In *United States v. Ellis* the Eleventh Circuit Court of Appeals considered the case of three county commissioners who each received kickbacks from a pipe company.  709 F.2d 688 (11th Cir. 1983).  The three commissioners were charged in one count that charged a single conspiracy as they were, at all relevant times to the indictment, commissioners in Bullock County, Alabama.  *Id*. at 689.  The court found that not only were they all commissioners at the same time but that they had the following in common:

- Each commissioner was permitted to requisition materials for performing work in his district;

- Each month he would check and verify invoices mailed to his supplier;

- **Each submitted the invoices to the "commission as a whole" to approve the invoices**;

- Each received a "kickback" of 10% from the pipe supplier after payment was received;

- The pipe company paid each of the commissioners in an identical fashion:

  o They pipe company cut a "commission" check to the salesman,

  o The salesman cashed the check,

  o The cash was placed in an envelope with the commissioner's district noted thereon, and

  o The Cash was delivered to the commissioner in whose district the work was performed.

Having considered the above evidence, the court found that there was not evidence of the single conspiracy alleged in the indictment.  The Court of Appeals reversed the conviction on the conspiracy count.

7

*Ellis* is particularly germane as the Government argues that the evidence of friendship[3] or even a fraternity of fellow Africans is somehow reason to conclude that there was one over-arching conspiracy.  In *Ellis*, the commissioners were from the same county, they served on the same board of commissioners, they met with some regularity to discuss commission matters, and, most significantly, they approved each other's work requisition orders that then resulted in the kickback. Yet, despite the closeness that could be inferred, the court refused to draw assumptions and infer a single plan or scheme.  The court rightly held that each must be charged for his own conduct absent a clear link.  Inference is insufficient. Here, unlike *Ellis*, there is actually evidence to refute a conspiracy as the Government's own witnesses, Ahn and McGroarty, stated that the "conspirators" were actually competitors.

---

[3] The Government has presented evidence of codefendants arriving at the Ahn's at times that overlap or are close in time.  The Government has even presented a photograph of one accused arriving at the Ahn's purportedly waiving to a departing "conspirator" as evidence of a conspiracy.  However, after six months of surveillance they do not have a single photograph of one conspirator assisting another.  Of course, the one exception is the hub, the Ahns, assisting the several spokes as the "spokes" made purchase from the Ahns.  Indeed, Scott Ahn testified that in all his time, he did not observe any of the targets of this investigation assisting one another.

Here, like *Chandler* and *Ellis*, there is no evidence that the accused agreed to some larger scheme.

### D. <u>Blumenthal</u>

The Government cites to *Blumenthal v. United States* in support of its position. *Blumenthal* involved the distribution of the Old Mr. Boston Rocking Chair Whiskey. This is quickly distinguished from the instant matter.

First, the Government would have this Court interpret *Blumenthal* in a manner inconsistent with the much more recent case of Chandler. Obviously, as Chandler was decided many decades later and considered *Blumenthal*, it would be clear error to disregard *Chandler*.

*Blumenthal* is also distinguishable factually. In *Blumenthal* we find at the hub essentially all the objectives of the conspiracy. Goldsmith, a liquor distributor, procured the liquor and devised to distribute it illegally through a number of distributors. He then needed to only recruit salesmen to distribute 2,000 cases of the liquor. Thus, there was a very finite objective, the distribution of 2,000 case of liquor, which Goldsmith organized his salesmen to achieve.

It is also critical to note that the whiskey in *Blumenthal*, unlike the disks here, was itself a prohibited commodity. Here, the hub, the Ahns, did not devise the plan; rather, they sold an ingredient that was a completely legal component.

Furthermore, in *Blumenthal* the objective was defined as there were only 2000 cases of whiskey to be distributed. Indeed, the court held "they became parties to the larger common plan, joined together by their knowledge of its essential features and broad scope, though not of its exact limits, and by their common single goal." *Id.* at 557.

### E. **Huff**

The Government's reliance on *United States v. Huff*, 609 F. 3d 1240 (11th Cir. 2010) is misplaced. In *Huff*, the defendants all worked towards one goal: placing fraudulent supply orders with Robbins Air Force Base. Furthermore, the defendants in *Huff* were completely dependent on one another. There, Huff, Deason, J.H. and S.H. shared this common goal for their own personal benefit. Both Huff and Deason used their positions as government credit cardholders to place fraudulent orders with both APC Supply and S & G supply which were both owned by S.H. and J.H. together. *Id.* at 1244. Both Huff and Deason, after placing orders they knew would not be filled would travel to APC to pick up the fruits of their ill gotten gains from J.H. and S.H. Moreover, in *Huff*, the interdependence among them was clearly delineated. Huff placed the orders which Deason picked up from APC's offices. And, both Huff and Deason clearly had this arrangement with S.H. and J.H. which was established by evidence that they were all good

friends.  It was also shown that they orchestrated this scheme together, agreed to defraud the government with their credit cards for their personal benefit by using APC and/or S& G, treated to lunch at APC's offices, and were taken on a hunting trip on APC's dime which constituted a bribe to continue the scheme. This was obviously one conspiracy unlike the case *sub judice*.

In the case at bar, there is no evidence that Amadou Diallo, Soulaman Jalloh, Mamadou Barry, Baremba Barry, Sedikey Sankana, Scott Ahn, or Moussa Baradji were working together to with a common goal.  Furthermore, the Government never established any interdependence.  Unlike the defendants in *Huff*, if one of the charged defendants did not continue their work, each person would still be able to independently run their business. Even if Scott Ahn stopped selling his blank media, any and all of the charged defendants still had other sources of supply for media. As Scott Ahn testified, he was not the only media supplier that they bought from. In *Huff*, if any of those players did not perform their designated roles, the scheme would come to a grinding halt.

Additionally, there has not been a scintilla of evidence establishing that the charged defendants or unindicted coconspirators ever shared profits or the ill gotten gains with one another. Also, unlike *Huff*, there has been no evidence presented that any of the charged defendants have any personal relationships with

one another other than living in the same area of town or working at the warehouse district. Whereas in *Huff* there were kickbacks and bribes given, the Ahns only received regular payments for their goods and charged for every single hour of work conducted for anyone charged in this case including a fee for taking Moussa Baradji to a car auction. There was also no evidence presented that any of the charged defendants would place orders with the Ahns on behalf of everyone and then divvy up the media between them. Nor was there any evidence presented that the charged defendants would make counterfeit DVDs or CDs for use in another person's business. To the contrary, many of the Government's own witnesses testified that these charged defendants were competing in reselling these items. Thus, when they happened to appear at Mr. Ahn's business simultaneously, they would not discuss business for fear that the other competitor/reseller would cut into their business profits.

## <u>CONCLUSION</u>

Wherefore, the defendants respectfully request that this Court issue an order directing that a hearing be held in this matter and all other relief the Court deems just and proper.

Dated: This 4th day of October, 2010.

Respectfully Submitted,

/s/ *John Lovell*

John Lovell

Attorney for Defendant

Georgia Bar No. 359390

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was formatted in Times New Roman 14 pt., in accordance with Local Rule 5.1C, and was electronically filed this day with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record including opposing counsel.

Dated: This 4th day of October, 2010.

/s/ *John Lovell*
John Lovell
Attorney for Defendant
Georgia Bar No. 359390
2921 Piedmont Road, N.E., Suite C
Atlanta, GA 30305
404.760.1116
404.760.1136 (fax)